All right, here you hear you hear you. This honorable public court of the Second District is back in session. Pursuant to adjournment, the Honorable Donald C. Hudson presiding. Thank you. Please be seated. All right. Good morning. Mr. Bailey. All right. Thank you, Mr. I want to represent the defendant, Apple. I'm Frank Martin. You know, is the issue in this case involves a trial judge? Getting a jury instruction that specifically affirmatively tell pulled the jury to consider other crimes? Evidence as propensity evidence. 15 allow that it does. Well, it allows the jury to do to consider the evidence that as that that jury instruction is actually, although ostensibly it was the modified version of IPI 3.14 is actually the exact opposite of IPI 3.14 and told the jury the precise thing that IPI 3.14 was designed to prevent. Well, let me ask you a special question. You're not disputing that the evidence could come in for propensity under the statute, correct? That's correct. That's not the issue. That's correct. The issue is telling the jury to consider it for that purpose. All right. So your essence, your position is a little more subtle. Are you saying that by giving that instruction, which the evidence clearly could come in, that somehow the trial judge is unfairly highlighting or calling the jury's attention to this powerful piece of evidence? That's exactly exactly my position. Exactly. Some states actually, virtually every state now allows propensity evidence for public policy reasons, correct? I believe so. And the federal government as well. And some states have jury instructions to specifically address propensity evidence, correct? Have you done a survey? I have not. I don't know either way, but it's certainly possible that they do. But like Illinois, like 3.14, the jury is also instructed that they must first decide whether or not the defendant engaged in that comment, correct? That's correct. And that is in this instruction? Yes. So what's the harm? Well, the harm is, the harm is that, to illustrate the harm, you have to look back at how these rules came about. The original, the general evidentiary rule is that when evidence is admissible for one purpose, it's admissible for every purpose. And the jury, it's inappropriate to tell the jury how to interpret evidence. So, for example, if you take, in this case, the defendant introduced evidence that he was somewhere else at the time that the offense allegedly occurred. It would be inappropriate for the judge to tell the jury, you can consider this evidence for alibi. That would be highlighting the evidence, and the judge obviously didn't do that in this case. This instruction, the reason there is a 3.14 is not to tell the jury affirmatively how to use the evidence. And that's really, and that's kind of the crux of... It's to guide them away from propensity. Correct. Correct. And that's why, you know, we have cases like Johnson and the cases that Johnson relied on where, you know, where the judge accidentally told them, you know, that wasn't a problem because as long as they're told not to do it for propensity, it was, you know, the purpose of 3.14 was fulfilled. We aren't really dealing with a two-step analysis as I'm looking at this. I mean, arguably, it was improper for the court, I would think, to give that instruction. However, a reviewing court would not ordinarily reverse a conviction unless that the faulty instruction somehow misled the jury or prejudiced the defendant. So how do you meet, even if we were to accede to the argument that the court probably should not give an instruction, why would the case have to be reversed? How do you meet those two prongs? So two ways, two ways. One, the effect of the instruction was highly prejudicial, and more so than, say, accidentally telling the jury to consider it for more saccharine. You know, propensity, you know, the whole, this whole body of law exists because courts recognize that propensity evidence is extremely prejudicial. And it's very powerful. And it's very powerful. Far more powerful, even though it is relevant, the courts generally recognize that it is relevant to issues in a case, it still gets kept out because we don't want the jury thinking about it. So even when it's admissible for that purpose, highlighting it in the judge's instructions is worse than it would be for something else. So if a judge highlights admissible evidence that's already been called to the jury's attention, already in evidence, that in and of itself would mandate a reversal? Well, it does in this case. And the other half of this is that the evidence in this case was not overwhelming. It wasn't overwhelming? It was not overwhelming. Yes. You know, it was, you know, this is, you know, a case with a 10-year delay in reporting the. . . That's not uncommon in sex abuse cases anymore, is it? That's not uncommon. But what is uncommon in this case is you have this specific conversation that the, you know, the AM had with her mother at the age of 17, which is several years after these events allegedly occurred. What she just discussed being uncomfortable with. Well, more than that, she actually complained of specific inappropriate sexualized conduct on the part of the defendant. And her mother was obviously extremely supportive of her during this conversation. In fact, you know, divorced the defendant, kicked him out of the house as a result of these complaints. And in that context, her mother asked her specifically, did he touch you? And she said no. So that's a little, I think that's more than you would normally see in a case with a delay in reporting. And given, you know, the defendant had about as good of an alibi as you can get given the nature of the allegations. Obviously, he couldn't give exact times because the complaint didn't give exact times. But he essentially established himself to another witness that he wasn't in the house for the vast majority of the period when the complaint allegedly occurred. Yeah. Under these circumstances, this is not overwhelming. And having the judge give essentially give telling the jury from the bench the state's theory of the case. It's the state's argument that you should use this as propensity evidence. So should the judge have just completely ignored the state's request to give an instruction? Or should he have given some modified form of 3.14? Ideally, I think he should have given no instruction at all. And treated it just like alibi evidence. Just, you know, let the state argue it and let the defense counsel argue it and leave it at that. Well, the caseload, it says it's unnecessary to give this instruction, right? That there's preexisting authority. That's correct. And I would say, you know, if he felt that he must give an instruction, he could track the statute, which says it can be used for any purpose. But you cite this God-bound case's authority that says instructions calling particular attention to certain portions of the evidence are improper. And I think the caseload is established. But in contrast to that case here, didn't the judge's instruction make clear it was still part of the jury's prerogative to determine the credibility and the evidence and the weight to be given to it? So you still have that part of the instruction you can't ignore. The judge didn't basically say, hey, highlight this. You have to consider its propensity. It still was a cautionary in the sense that you have to determine whether the credibility of it, the efficacy of the evidence, does that bear in the mix at all? I think, well, I think it's outweighed by suggesting the state's theory to the jury. I think it would be worse if that language was not in there. Right. That's certainly true. But even with that language, it's still, you know, the judge coming from the bench telling the jury, you know, the same guy who's been telling the jury what to do all case, telling them this is what you're supposed to consider this for. And with it being propensity and not, you know, some of the more benign uses of this evidence makes it that much more prejudicial. I take it you don't have a specific case that says giving an instruction like this on propensity evidence is automatically reversible error. Probably that that law doesn't exist in Illinois at this point. Is that correct? Yeah, I think that's correct. So there's a case of first impression? I believe it is. Yes. I believe it is. And it is one that, you know, frankly probably needs to be decided because this is an instruction that is given on occasion. And you can see from Johnson and I believe Perez. Johnson, they weren't arguing as you were not to give any instruction. Wrong. Correct. The argument Johnson was whether or not including modus operandi intent and some other issues were. And that's the difference, because the difference is that those things are benign. So even if you tell the jury. Does the jury really know the difference between them? I mean, you're saying they're benign. You say the jury heard what they heard and they're going to use it for what they want to use it for. And you give them an instruction saying use it for modus operandi. Don't use it for propensity. Don't use it for this. Do you really think that as a jury they understand all that? Well, I hope they do, because because that's the that's why we have three point one four is to. And we assume that they are going to follow. Yes. You argued earlier about that the evidence is not overwhelming. Doesn't the testimony of ZM, the brother, make the evidence overwhelming? I don't. I don't believe it does. He corroborates A.M.'s testimony in large measure. The defendant's sexual interests and the nudity, et cetera. I mean, their their testimonies mirrored each other, except they're different sexes. Why? And I do think that the fact that they're different sexes is probably relevant. And I don't know that to the point. It's relevant or irrelevant. I think it is relevant to the extent that I mean, I don't think you can say this was modus operandi. Well, you're not challenging the admissibility of the evidence. So that's another. That's that's correct. I mean, it's it's it must go under one fifteen seven point three. So how is this case close or how is it not overwhelming when you have all that evidence of the defendant's sexual conduct, conduct and interest in children? Well, I mean, ZM, like A.M., has has the large delay in reporting. Well, that goes to the weight and the credibility of those witnesses. So it goes to weight and credibility and credibility. And to end that. Well, that's what you know, that's what that issue one time. Well, it's overwhelming. And it goes to the weight and the credibility. And if you combine that with the defense evidence of the alibi, the question here is not is it legally sufficient? And it's not even is it close? Is it overwhelming? And it's the state's burden on the since it was preserved, the state's burden to establish that it was harmless beyond a reasonable doubt. And I don't believe they can do that here. That I don't think it meets that high of a standard. Unless your honors have any further questions. I would ask that you adversely defend the defendant and offer him trial. Thank you.  Thank you very much. Counsel. My name is Stephen Rogers and I represent the people of the state of Illinois. Your honor. The state is here this morning to ask that this court affirm defendant's convictions. And I believe it would be appropriate to start with what is not an issue. As the defense has conceded, this evidence couldn't come in. It was appropriate and they could consider it for propensity. So unlike a Cardamom type case, there were not excessive instances. Unlike Perez, there was no confusion between charged and uncharged conduct. The verdict forms were clear. In fact, the complaint in Perez was that the limiting instruction was not given. And so they would have liked to have a limiting instruction. And so now we're at the argument that the appropriate law was given and that that unduly highlighted. However, you're not going to argue, are you, that the judge was proper in giving the instruction? Well, I believe the trial judge gave an instruction that accurately stated the law. I agree that under Perez and Johnson, it's certainly not necessary. And so had the judge not given the instruction, there certainly could not have been an argument on either side that that was an abusive discretion. How is it not reversible error? Well, Your Honor, part of it is the overwhelming evidence. And the other part is when you reverse based on an instructional law, it's generally because it's misleading. In God Bow, for example, there was an appropriate instruction that stated that there's a rebuttable presumption that when an individual blows on a breathalyzer over a certain amount that they are intoxicated and that's rebuttable. And then a couple of instructions in, it says the court instructs the jury that the effect of the presumption is to eliminate the necessity of proof by the prosecution. And they said when you layered those together, it could make the jury think the state didn't need to present any other evidence, even if the defense did contradict. Other than the breathalyzer. Yes, Your Honor. And so here we just have one simple instruction that stated the law. And the defense is not making any argument that this evidence shouldn't have come in, that there was any confusion about the law. It's just essentially that it was highlighted. Well, what about this, though? He's saying when you highlight it and you emphasize what everyone would agree is a pretty powerful piece of evidence, that prejudice is independent. Well, Your Honor, I don't think there's prejudice if we're talking about, if we're going to harmless air, I do think there was overwhelming evidence when you start. A is five years old, saying dad comes down, naked, gets in bed. It starts at a mild level. It's a hugging, some inappropriate touching. And then it builds up. So you're saying even if this instruction were not given, he would have been found guilty. Absolutely, Your Honor. And then the other part is I don't think there was anything misleading about the instruction. And that also plays a part. And in Johnson, the court did actually instruct on propensity. It was three inappropriate issues, intent and propensity. And the summary this court gave was because the trial court properly instructed the jury that it could consider the other crimes evidence as to the defendant's propensity and intent. Its instruction that the jury could also consider the evidence for three improper reasons is not a ground for reversal. So while it's unnecessary, there's also, in the IPIs, there are many instances where it tells the courts, do not give this instruction over defendant's objection. Do not give this instruction unless requested by defendant. This instruction has not been really modified at all since Donahoe. No, Your Honor. And shouldn't it be? And certainly they should do something with 115-73. I think either say never give it unless the defendant requests or give some modified version. But I think as Your Honor stated earlier, it accurately states the law. And in the fourth paragraph, it's not really the judge saying, hey, look at this. You've got to consider it for this. It says, hey, determine the weight. And they can argue the delay. They can argue that A.M. had this conversation with her mom. So you're saying that mitigates or tends to cure any errors with that? Absolutely, Your Honor, because if the argument is the judge was kind of saying, hey, jury, look at this evidence. You need to consider it for this. You have that final. The instruction tells the jury you must first consider whether or not the defendant engaged in this conduct. Yes, Your Honor. Actually, your argument is that that favors the defendant's. Yes, Your Honor. I think there were a couple things about the instruction that do favor the defendant. That's one of them. And then the other one is in some of these cases, there's some confusion. You know, maybe a jury is going to convict just based on the uncharged. That was Perez, that it really wasn't stated throughout the trial what was charged to uncharged. Here there were a couple instances where I think it was made clear to the jury that Z.M.'s testimony was – that was not the allegation here. Well, they didn't get the verdict forms on Z.M. Yes, exactly, Your Honor. So the verdict forms were clear. So I think that final paragraph, and then the committee comments say that. You know, the jury is free to accept, reject. And even if they accept it, they can say, well, we think something like this happened, but we're going to give it less weight because there was a delay in reporting. I mean, that instruction does not have, as some other states have, and I think the federal instruction says you should not find the defendant guilty solely based upon the propensity evidence. That instruction does not have that safeguard, correct? This does not, Your Honor. And I think in some cases, you know, where you have overwhelming – like where there is, you know, 20 pieces of propensity evidence and only a single charge, there might be some danger, but a lot of this evidence was contextual, how this household was. As you said earlier, the allegations between Z.M. and A.M. are pretty similar. A lot of it's, you know, mom leaves, the clothes come off. And that's how it's built up. And so I think the jury is going to use it primarily for that reason that, hey, this is how these things went. And, you know, when the mom's gone, that's the opportunity to commit the crime. Well, didn't he have his clothes off even when mom was there? I think occasionally, Your Honor, and that produced some issues in the marriage. And so I think over time he probably kept them on more often than not when mom was there. But it still did happen. So if you were to summarize the essence of your argument, what would it be as to why this is not reversible? It's a couple things. First, the instruction was accurate. And the first is that it was accurate. Second is that the jury still pulled away the evidence. And the third is that it's harmless error. I mean, when you put all this evidence together, it's overwhelming that something was happening here. It wasn't, you know, this incident came out of nowhere. And he admits to a lot of the nudist behavior. They go to Indiana. So that's the gist. That's the three main parts. Do you think there was an instruction on the nudist behavior? I don't think so, Your Honor. I don't know. Maybe the defense would want an instruction on that to say that that's, I don't know. I mean, that's, I think, probably appropriate for argument that, and I think they did argue in closing and opening, that this is common to some people in some areas of the country, people practicing this behavior. And I think the jury probably looked at it. While that may be true, it's not appropriate to, you know, indoctrinate your young children into that lifestyle. And that's really why the evidence was overwhelming because it's pretty much a grooming situation here. What that is is you're lowering the inhibitions. You know, we can be naked together. These things are fine because a lot of it starts off at least a little more innocent where they're just naked together, and then it gets into the inappropriate touching and the criminal conduct. And so if this Court doesn't have any other questions, does the State respectfully request that this Court affirm defendant's convictions? Thank you, Mr. Rogers. Thank you. Mr. Himmel, any rebuttal? Your Honor, I have three points. First of all, I want to point out, this instruction is technically not accurate. The law is that this evidence shall be interpreted or can be admitted for any purpose for which it is relevant. The instruction doesn't tell the jury that. It tells the jury propensity. So we all know that propensity is the one purpose that matters, but technically what the law is and what the jury instructing tells the jury are not the same thing. You're not contesting that the State properly argued in closing argument the use of this evidence, are you? I am not. That's their argument. The State used this evidence to show the pattern of behavior involving both children, that there was a secret, these secrets were kept between these children and the defendant, and that's the way the argument flowed. They never said find him guilty because he abused Deanne, correct? Correct. And they can make that argument. That's an appropriate argument. It's just when it comes from the bench, it's different. So is it your position, and why they asked Mr. Rogers, is it your position that had this instruction not gone in, he would have been found not guilty? It's possible. I say my position is that the State cannot establish beyond a reasonable doubt that he would have done, and that's the standard that this Court has for this error because it is preserved. My other point I wanted to make was this non-criminal nudity evidence really wasn't part of the 115.7.3 evidence and it wasn't what was subject to this instruction because that's not this non-criminal behavior. The instruction, 115.7.3, only applies to actual offenses. But you argued that. The prosecutor or the defense argued that at the trial, that this is not criminal behavior. Correct. And I just, that's not part, what the instruction was referring to was ZM's testimony about what happened in Indianapolis and nothing else. So this nudity, the nudity itself really isn't part of the equation in this issue. And finally, I just would, you know, would point out that even the State's brief did not argue, the word overwhelming doesn't appear in the State's brief. They actually argued in their brief that the evidence was sufficient to prove the defendant beyond a reasonable, guilty beyond a reasonable doubt, and that's not enough. The State evidence has to be, to prevent reversal here, assuming that you find error, is to find that you find that it was overwhelming. And with that. The giving of an instruction is the standards of abuse of discretion, correct? That's correct. And so your argument is that it's clear that the trial court here abuses discretion. Yes. That no reasonable jurist would agree with the trial court's decision. Yes, that's correct. No reasonable judge should give this instruction at all, really, under any circumstances. All right. Thank you, Your Honors. I ask you to reverse the convention and run for the trial. Thank you. All right. I'd like to thank both counsel this morning for the quality of their arguments. The matter will, of course, be taken under advisement, and a written decision will issue in due course. We'll stand in brief adjournment while we prepare for the next case. Thank you.